ANNA E. HARRELL AND HER HUSBAND *v.* H. R. HARRELL

A crop growing at the time of the dissolution of the marriage forms part of the acquets and gains.
The Judge in decreeing a partition must direct the manner in which it shall be made.

APPEAL from the District Court of East Feliciana, *Ratliff*, J.
*Muse & Hardee* and *Race & Foster*, for plaintiffs and appellees.    *Bowman & Delee*, for appellant.

VOORHIES, J.    This is an action of partition.    On the 17th of June, 1838, *Frances Hobgood* died intestate, leaving as her legal heirs three minor children, the plaintiffs, *Mary E.* and *Harriet L. Harrell*, issue of her marriage with the defendant.    No steps appear to have been taken by him to have an inventory made of the property of the community or to be confirmed as natural tutor to his minor children until after the marriage of the plaintiff, when an inventory was made on the 11th of April, 1853, which comprised twenty-one slaves, as the only property which belonged to the community.    He was confirmed as natural tutor to *Mary E.* and *Harriet L. Harrell* on the 1st of June, 1853, and on the same day *William B. Hobgood* was appointed their under-tutor.

The plaintiff claims as her hereditary rights, 1st, one-third of the sum of $1278 32, which her mother inherited during the marriage, and which her father received and converted to his own use, together with 5 per cent. interest thereon ; 2d, one-sixth of the slaves thus inventoried as the property of the community, with their hire since the death of her mother ; 3d, one-sixth of the crop of the year 1838 ; 4th, one-sixth of the movables which belonged to the community at the time of its dissolution, and of which no inventory was ever made.

The defence set up by the defendant is, that the community is largely indebted to him, and that the interest and revenues derived from the estate of the plaintiff were exhausted in defraying the expenses for her support and education.    He also pleaded a general denial.

The cause was submitted to a jury, who returned a verdict that the plaintiff recover of the defendant the sum of $1768 80, and that a partition of the community property be made as prayed for by the plaintiff.    From a judgment thereon rendered, the defendant, after having made a vain attempt to obtain a new trial, took the present appeal.

In order to determine the sum to which the plaintiff is entitled we must endeavor to ascertain from the evidence what property belonged to the community at the time of its dissolution, and what were the debts which existed against it and subsequently discharged by the defendant.

We infer from the evidence that the crop of cotton, corn and fodder gathered in the year 1838 was worth $3833, and that the household and kitchen furniture, horses, cattle, hogs, farming utensils, a carriage and a wagon, were worth the sum of $2077, making an aggregate of $5910.    The defendant must be held bound for this amount, subject, however, to be credited for the debts of the community discharged by him; C. C. 333 ; 3 An. 611.    The debts of the Union Bank of Louisiana, and *William B. Hobgood*, as overseer, were the only debts due by the community as shown by the evidence.    At the date of the dissolution of the community the bank debt, exigible the 16th of February,

1839, amounted to the sum of $2775, and the debt of *Hobgood*, including his wages for the year 1838, amounted to $1300, making in the aggregate $4075. The community must also be charged with the sum of $1278 33 which was inherited by the deceased spouse and received by the defendant during its existence. Deducting these amounts from $5910, the acquets and gains amounted to $556 67, to one-half of which the defendant was entitled, thus leaving the balance, to wit: $278 33 as a part of the inheritence of his children, to one-third of which the plaintiff is entitled, to wit: $92 77⅔. We are satisfied from the evidence that the annual interest of this sum and her portion of the revenues derived from the slaves of the community, were not more than adequate to defray the expenses of the support and education of the plaintiff.

It is contended by the defendant that the crop of 1838 cannot be considered as acquets and gains of the community. The question here raised can no longer be considered as an open question. See the case of *Wilcox* v. *Henderson* 9 A. 347. The sum of $400 for overseer's wages for that year, was allowed as a charge against the community, incident to the making of the crop of that year. It does not appear that the defendant claimed any other charge in relation to it.

It is evident, therefore, that the plaintiff was only entitled to recover the sum of $92 77⅔ as her share of the acquets and gains of the community and the sum of $426 11 as her share in the paraphernal estate of her deceased mother, making an aggregate of $503 77⅔, and not the sum of $1768 80 as awarded to her by the verdict and judgment of the court below.

The judgment is also erroneous, as it does not direct the manner in which the partition shall be made, but merely orders that the same be made and referred to a notary. The Code of Practice, Article 1057, declares: "At the expiration of the time allowed for answering the petition, the Judge shall decree the partition, direct the manner in which it shall be made, and refer the parties to a notary whom he shall appoint to make the partition." C. C. 1267 ; 1 R. 512. In order to ascertain whether property may be conveniently divided in kind, it is essential that the appraisement of it should be made within the year preceeding the decree of partition. C. C. 1247, 1248, 1249. In the present case the decree of partition was rendered on the 29th of November, 1856, more than three years after the appraisement of the slaves was made.

It is, therefore, ordered and decreed, that the judgment of the lower court be avoided and reversed, that the plaintiff recover of the defendant the sum of five hundred and three dollars and 77 cents, with five per cent. per annum interest from the 29th November, 1856, until paid, and that this case in relation to the partition of the slaves of the community be remanded to be proceeded in according to law, the costs of this appeal to be paid by the plaintiff and appellee, and those of the court below to be determined on the final decision of said cause.

Chief Justice MERRICK recused himself, having been of counsel in the case.